Steven Raj. #93375-011
Federal Correctional Institution
P.O. Box 5000
Sheridan, OR. 97378

FILED '05 AUG 30 15:00 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

| | |
|---|---|
| STEVEN RAJ,<br><br>       Movant,<br><br>    v.<br><br>WARDEN CHARLES DANIELS OF<br>THE SHERIDAN FEDERAL CORRECTIONAL<br>INTSITUTION and THE BUREAU OF<br>PRISONS.<br>          Respondents, | Civil Case No. '05 1347 KI<br><br>MOTION FOR WRIT OF HABEAS CORPUS<br>Pursuant to 28 U.S.C. 2241 |

## JURISDICTION

The movant asserts that this Court has jurisdiction over the movant pursuant to 28 U.S.C. 2241 because the movant is in the custody of the Bureau of Prisons at Sheridan, Oregon where the respondent is his custodian after being found guilty of violating 18 U.S.C. 922g, a law of the United States, and being sentenced on the 10 day of March, 2005,... in the United States District Court to a term of 70 months of imprisonment.

The movant further asserts that this Court has jurisdiction over the subject matter pursuant to 28 U.S.C. 2241; because he is challenging the fact that he was denied early release pursuant to 18 U.S.C. 3621e, an such a challenge is an alleged challenge to the "Conditions of his Confinement" as seen in Bohner v. Daniels, 243 F. Supp. 2d. 1171, 1179 (D.Or. 2003) and Paulsen v. Daniels, C.A. no. 35337 (9th Cir. 6/27/05).

## ALLEGATION

The movant alleges that the Bureau of Prisons (BOP) Policy Statements (PS) and Change Notices (CN) used to deny him early release is un-enforceable because

Motion-1

of the reasons found below, the movant further asserts that this is the latest chapter in a series of cases concerning a program created by Congress for the purpose of supplying Substance Abuse Treatment to prisoners in an effort to reduce overcrowding in the Federal Prison system.

In 1990, faced with a burgeoning federal prison population for drug related offenses, and evidence that prisons substance abuse treatment programs sharply reduce recidivism, Congress **required** the Bureau to "Make available appropriate substance abuse treatment for **each prisoner** the Bureau determines has a treatable substance addiction or abuse condition." Crime Control Act of 1990, Pub. L. 101-647, §2903, 104 Stat. 4789-4913, (Codified as amended 18 U.S.C. §3621(b)).

In 1991, in response to the above directive, the Bureau implemented the Residential Drug Abuse Program, commonly known as RDAP.

In 1994, concerned by a lack of participation in the program and continuing concerns about a growing prison population, Congress amended the 1990 statute to provide federal prisoners with **incentives** to complete a bureau substance abuse treatment program by **authorizing the reduction of time an inmate spends in custody after successfully completing such a program,** the incentive reads:

> "The period a prisoner **convicted of a non-violent offense remains in custody after completing a treatment program may be reduced by the Bureau of prisons,** but such reduction shall not be more then one year the from the term the prisoner must otherwise serve". Crime Control and Law Enforcement Act of 1994 (VCCLEA) Pub. L. 103-322, §32001, 108 Stat. 1796-1897, (Codified as 18 U.S.C. §3621(e)(2)(B).

On July 25th, 1995, the Bureau published a regulation to implement the Early Release Incentive program as directed by Congress. In that regulation known as P.S. 5162.02, "Definition of Crimes of Violence as the term is used in certain Bureau programs including RDAP", the Bureau defined prisoners who had <u>not</u> been convicted of a non-violent offense and thus were ineligible for early release, as those **Prisoners "currently incarcerated for a crime of violence as defined in 18 U.S.C. §924(c)(3)".** 28 CFR 550.58 (1995).

Despite the fact that the Bureaus statement above clearly deferred the definition of "Crime of Violence" to Congress, and despite the fact that the Bureau

Motion-2

clearly limited such denial to those inmates **currently incarcerated for crimes of violence,** the bureau published five more program statements and changes notices amending the early release provision from July of 1995 to October of 1997. When it finally published the cumulative changes to all those program statements, . . . . the bureau listed some thirteen categories of inmates that under the directors discretion were to be denied early release not found in the original 1995 program statement,  28 CFR 550.58, 1997-2000.

Between 1997 and 2000, dozens of inmates filed challenges to the new program statements vesting such power in the director, however all of these were limited to only the fact that the director had listed all firearms offenses as reasons to deny inmates their statutory right to the year off.

On October 15, 1997, in light of a Circuit split on the above issue regarding firearms offenses, the bureau published an "interm regulation" but  made it effective one week earlier on October 9, 1997. The 1997 interm regulation, differed from the 1995 program statement an all others that proceeded it, in that it made ineligible at the directors discretion those inmates who:

1.) were INS detainees,
2.) who were pretrial detainees,
3.) who were contractual border detainees (for example D.C. state or Military prisoners).
4.) who had not just instant offenses for crimes of violence but prior convictions of crimes of violence no matter how old the conviction.
5.) who had prior convictions for Homicide, forceable rape, robbery, aggravated assault, or child abuse offenses, regardless of if they were felonies or misdemeanors,
6.) who were to have been alleged in a investigation report or other documentation to have committed one of the above regardless of whether or not it resulted in a conviction such an offense.
7.) Inmates who's current offense is a felony described in 18 U.S.C. §924(c)(3), (A) or (B).
8.) offenses involved a firearm or explosive device.
9.) offense by it's nature involved the sexual abuse of children.
10.) who had a possible Want, Warrant or detainer,
11.) committed a 100 series prohibited act after completing RDAP that was related to drug or alcohol violations.
12.) were deemed ineligible for community corrections or halfway house at the discretion or their unit team,  and;
13.) who refused community corrections or halfway house participation.
(28 CFR 550.58 62 FR 53,691 October 15, 1997).

Motion-3

On Dec. 22, 2000, the bureau replaced the 1997 interm regulation with a final rule, which adopted the 1997 regulation without change. 65 FR 80,745. The commentary accompanying that final regulation noted that the bureau had received approximately 150 comments from individuals and orginizations, 138 of which were identical. The bureau's summary of those comments did not mention any challenge by any commentator to the procedural regularity of the 1997 interm regulation. id. at 80,747, 80,748.

On June 27, 2005, the Ninth Circuit Court of Appeals combined the cases of 16 former inmates of the Sheridan Federal Correcional Institution, who had been incarcerated there between the years of 1997 and 2000. Those inmates had amended their previous petitions with the approval of the Ninth Circuit to allow them to ad a challenge that the 1997 Interm regulation vesting the desretion in the Director to deny inmates early release for those who had firearm offenses was un-enforceable, because it had been implemented in violation of the APA's notice and comment section, specfically that it had been implemented before the 30 day notice requirement had expired as required by the APA.

The Ninth Circuit in the above case known as <u>Paulsen v. Daniels</u> CA. No. 35227, (9th Cir. 6/27/05), held that:

1.) The bureau plainly violated the APA in it's promulgation of it's 1997 interm rule,
2.) That the effect of the interm rule was to deny the petitioners a sentence reduction,
3.) That the petitioners clearly sustained an injury in fact affording them standing to file their Habeas Petition,
4.) That the bureau's contention that "it's violation of the APA was harmless because none of the petitioners were denied Early Release until after a <u>reasonable amount of time had passed</u> to comment on the rule change", was meritless,
5.) and finally that relief should be granted to those petitoners still in the custody of the Bureau and that the Habaes jurisdiction attaches to it's filing and is not rendered moot with transfer of the inmates to supervised release.

In this case now before the Court, the movants seek the same relief as those in the <u>Paulsen</u> case because, 1.) they were denied pursuant to the same 1997 interm regulation as those in <u>Pauslen</u>, 2.) the December 22, 2000 final rule was also prom-

Motion-4

ulgated in violation of the APA's notice and Comment section, and 3.) even if this Court were to rule that the above mentioned APA violations were harmless, the December 22, 2000 Final Rule is unenforcable because it is clearly in conflict with the statutory language and intent of Congress.

### CLAIM 1

**THAT THE MOVANTS ARE ENTITLED TO THE SAME RELIEF AS THOSE PETITIONERS IN THE PAULSEN CASE, BECAUSE THEY TO WERE ADVISED IN WRITING THAT THEY WERE BEING DENIED EARLY RELEASE ACCORDANCE WITH THE OCTOBER 9, 1997 PROGRAM STATEMENT.**

The movants allege that as seen in Exhibits 1, 2, & 4 attached, they were either denied by use of a Provisional Eligibility Attachment "J" form P.S. 5530. 10, CN-03 of October 9th 1997, (the same program statement deemed unenforceable in Paulsen), or the movant was denied early release on a "January 04, provisional eligibility form "attachment "J" that specifically stated in the Comment section, "In accordance with program statement 5162.04 categorazation of offenses dated October 9, 1997.... you are precluded from Early Release consideration due to your current offense of, "felon in possession of a firearm, 18 u.S.C. §922(g)(1)". (again citing the same program statement deemed unenforceable in Paulsen, even though the movant was not denied until the year 2004.) or as seen in Exhibit 3 attached, was denied on the same January 04, Provisional Eligibility Attachment "J" form as above, but the staff failed to note any program statement used to support the denial in the comment section as required by their own policies. And as seen in exhibit 4 attached, even on administrative remedy appeal to the Western Regional Office, the Bureau of Prisons still today continues to support their denials using the October 9, 1997 program statement, and makes no mention of any Final Rule allegedly dated December 22, 2000. Again the movant(s) believe this is an intentional effort by the bureau to keep the so called December 22, 2000 Final Rule a seceret so that inmates did not comment on it.

### CLAIM 2

**THE MOVANTS ARE ENTITLED TO THE SAME RELIEF AS THOSE IN PAUSLEN, EVEN IF THE COURT WERE TO RULE CONTRARY TO THE NINTH CIRCUIT THAT THE APA VIOLATION WAS HARMLESS AS TO THESE PETITIONERS BASED ON THE REASONING THAT THEY WERE NOT DENIED UNTIL A REASONABLE AMOUNT OF TIME HAD PASSED SINCE THE FINAL RULE WAS**

Motion-5

**IMPLEMENTED, BECAUSE, THAT FINAL RULE WAS ALSO IMPLEMENTED AS ASSERTED BELOW, IN VIOLATION OF THE APA'S NOTICE AND COMMENT SECTION DUE TO A PRACTICE OF THE THE BUREAU REFUSING EVEN TODAY TO MAKE AVAILABLE TO INMATES THE PROPOSED CHANGES IN A TIMELY MANOR.**

In the above mentioned Pauslen case, Ninth Circuit appears to infer that although the Bureau's final rule denying inmates early release at the directors discretion is infact valid, the movant's argue that this is not the case because the so called final Rule of December 22, 2000, was implemented in violation of the same section of the APA as the 1997 interm rule.

As seen in Claim 1 above, and the attached exhibits, the bureau appears to go to great lengths to keep inmates from participating in their "Rule Making" procedures, in that they have refused to supply the inmates with copies of the proposed rules or even the final rules in a timely manor as required by the APA. As noted in the affidavits attached to each filing, the movant has noted that there are no copies of any change notice, federal register publishings, or even a copy of any final rule dated december 22, 2000 in the law library or posted in any housing unit at Sheridan FCI. Rather, what is available is a copy of the program statement dated October 9, 1997 in the law library, the same one deemed un-enforceable in Paulsen and there is no December 22, 2000 Final Rule available.

Title 5 Section 553 (b) (c) and (d), clearly require that an agency make available to all interested parties or persons copies of proposed rule changes, as well as copies of final rule changes in a timely manor so as to allow those interested persons to participate in the decision making process. see Paulsen at 7604., yet even though there were 16 cases pending in either the District Court or the Appellate Court at the time the alleged Final Rule was published the bureau, made no provisions to insure that the inmates at Sheridan FCI even knew the rule was about to become final, infact as seen in the eligibilty forms and the copy of the program statements currently in the law library, the bureau seems to have gone to great lengths to hide the fact that the inmates had a right to challenge the rule and participate in the rule making process, by only

Motion-6

making available to inmates copies of the October 9, 1997 invalid interm program statement and citing it as the one they are being denied early release under. As also noted in the declaration of one of the movants, when he found that there were no copies of the change notices or federal register publishings related to the RDAP changes, he sent a cop-out to Law Library Supervisor Gilmartin requesting copies and a statement in writing why they were not readily available in the law library, after no response, on August 5, 2005 that same inmate noted that a new list of proposed and final rules had been copied and supplied to the clerks of the library for the inmates to see, the only proposed rule on that list dated July 27, 2005,... placed in the library was for changes in the incident reports, and co-pay issues for health care, however attached to that same set of proposed rules was a list of 15 proposed rules or final rules that were.... cited as being available in the law library, upon receiving this information that same inmate accompanied by several movants aproached Education Special Supervisor Mr. Tony to inquire about the fact that none of the alleged documents were available in the law library, this was on Aug. 5, 2005 at about 1 p.m. after a through check by Mr. Tony verifying the documents were available from the Central Office in Washington D.C. and with no explination why they were not available in the law library, the inmates were again referred back to Mr. Gilmartin. With all this in mind, and the fact that the Paulsen case clearly notes that "out of the 150 comments received by the bureau regarding the 1997 interm program statements, of which 138 were identical, and that there was no mention that any commentator challenge the changes" Paulsen at 7594, the movants assert that any reasonable jurist would find that the Bureau of Prisons even after being found guilty of violating the APA, conspired to continue to deny the inmates their right to participate in the rule making process as required by the APA, and as such the alleged December 22, 2000 Final Rule should be deemed invalid and unenforceable. While the bureau may no doubt argue that the proposed and final order

Motion-7

were some how available to the inmates but that the inmates some how removed them, this too is a meritless response because as also noted in the attached declartions to each filing, there is a notice in the housing unit that reads:

OPERATIONS MEMORANDUM CHANGES
FEDERAL REGISTER NOTICES

"A copy of the operations memorandums and federal registers is available in their <u>entirety</u> in the unit managers office and the Law Library by leaving your commassary card to pick up a copy."

As stated above this is simply not true, however this notice does support the movants position, since this very notice is posted in a locked cabinet in the housing unit where inmates have no access, and right above it is a change notice posting relating to "Special Housing Issues" dated 10-11-2000 and to be made effective 11-6-2000 (again it was to become effective in violation of the 30 day rule as required by the APA). The above notice also supports the fact that even though that notice was pending at the time the interm rule should have been posted, as well as the final rule, it is still posted in a secured area where the RDAP changes have never been. Again, the movants argue that any reasonable jurist would find, .... that there is more then ample evidence to support the allegations that the bureau has intentionally interred with the movants rights to participate in the decision making process of the agency.

### CLAIM 3

**THAT EVEN WITHOUT THE APA NOTICE AND COMMENT VIOLATIONS, THE 1997 AND 2000 FINAL RULE ALLOWING THE DIRECTOR TOTAL DISCRETION TO DENY INMATES EARLY RELEASE CANNOT STAND BECAUSE IT IS IN DIRECT CONFLICT WITH THE STATUTORY LANGUAGE AND INTENT OF CONGRESS.**

The movants assert that when Congress created the Crime Control and Law Enforcement act of 1994 amended as 18 U.S.C. §3621(e)(2)(b), it placed certain limitations on the bureau with respect to who they could and could not deny early release too after completing the RDAP program. First, they clearly stated without any ambiguity that those inmates "convicted of a non-violent offense" would receive the early release incentive. As such Congress intended to limit the bureau's

Motion-8

discretion to deny inmates their statutory right to early release, to only those inmates **"Convicted of Crime of Violence"**. With that in mind, there can only be one question here, "What is a Crime of Violence?" Clearly as seen in the bureau's 1995 program statement, they admit that the term "crime of violence" was not ambiguous, and that Congress had already defined it when they state in their 1995 program statement 5162.02 titled "Definition of Crime of Violence as the term is used in certain bureau programs," (including RDAP), and as **meant** in the VCCLEA of 1994, "The bureau defined prisoners who had not **been** convicted of a non-violent offense and thus were ineligible for early release, as 'those prisoners **currently incarcerated for a crime of violence as defined in 18 U.S.C. 924(C)(3).'"**

In 18 U.S.C. 924(c)(3), Congress defined a crime of Violence as:

> "For the purpose of this subsection, the term "Crime of Violence means a **felony and—**"

From that text alone, it is clear that the bureau's later program statements making inmates who were found guilty of **misdemeanors rather then felonies** ineligible for early release is in direct conflict with Congress's intent and the statutory language of 18 U.S.C. §924(c)(3), the same can be said for the bureau's program statements that exclude inmates from receiving the early release incentives based on the fact that they were "**alleged** to have committed some crime of violence but since they were only convicted of a misdemeanor non-violent crime, the underlying allegations should be used." This clearly is in conflict with Congress's intent and statutory language, Congress clearly stated "the period a prisoner **convicted** of a non-violent offense," there can be no argument that there is a difference in the legal term or statutory term of **alleged** and **convicted**.

Next the movant asserts that the bureau clearly accepted the fact that Congress did not intent to take into consideration **prior offenses** when deciding whether or not to grant early release to inmates, they admit this in the same 1995 program statement mentioned above when they state, "The bureau defined prisoners who had not been **convicted** of a non-violent offense and thus were ineligible for early

Motion-9

release as those prisoners **currently incarcerated** for a crime of violence as defined in 18 U.S.C. 924(c)(3)." Clearly here, the bureau had no doubts that Congress limited their discretion to deny prisoner their early release to only use the instant offense, not prior offense, there can be no doubt that there is a statutory and legal difference in **prior** and **currently.**

Next the movant asserts that Congress did not vest the discretion in the bureau to determine what elements outside the statutory language can be construed as a **crime of violence.** In 19 U.S.C. 924(c)(3) just as in the above assertion that the use of a misdemeanor or charging document is not the same a the use of a conviction, Congress clearly defined what elements make up a Crime of Violence. in 18 U.S.C. 924(c)(3), it states "a felony and--(A) has as an element the use, attempted use, or threatened use of physical force against a person or property of another." clearly here the word **element** is not ambiguous, and as such inorder for a crime to be a defined as a crime of violence, it must carry in it's statutory language the **"element"** of use, attempted use or threatened use of physical force. None of the offenses added outside the original VCCLEA list carry such elements in their statutory language, as such defining them as a crime of violence in order to deny inmates their statutory right to early release, is clearly an abuse of discretion. This is extremely clear when one considers 18 U.S.C. 922(g)(1), exfelon in possession of a firearm's statutory language which contains no hint of the above required element.

Next the movant asserts that the bureau's use of 18 U.S.C. 924(c)(3)(B) as a "catch-all" to allow them to determine what offense by nature carries the above elements is a meritless argument. First and foremost the movant will concede that on it's face 18 U.S.C. 924(c)(3)(B) which reads:

> "That by its nature, involves a substantial risk that phyiscal force against the person or property of another may be used in the course of committing the offense"

could be interpreted as being slightly ambiguous, however, when looking at this portion of the statute from a "fact finding postition" it is clear that as seen

Motion-10

nearly all the recent cases such as <u>Booker</u>, <u>Fan Fan</u>, and <u>Blakely</u>, the High Court has already made it clear that any element that is used as to enhance a sentence must be admitted by the defendant or found to be true by the jury, even the Court is not allowed to make such findings. The movant argues that this is exactly what the bureau is doing, they seem to believe that regardless of whether or not a prisoner was found to have committed an offense in a particular way that includes the required element, and regarless of whether or not he was enhanced at sentencing for doing so, they have the right to determine which offenses can be considered a crime of violence by nature rather then by statutory language, again the movant argues that inlight of the recent cases mentioned above the is a clear violation of the Separation of Powers Act as well as a violation of the prisoner's Sixth Amendment Rights.

What this all comes down too is what really is the meaning of 18 U.S.C 924 (c)(3)(B)? the movant asserts that that has been decided however since the bureau seems to challenge this and claim they are allowed to interpet its meaning so that it benefits them, the the movant would ask the court to note that in <u>Arnold v. County of Nassau</u>, 252 F.3d 599 (2nd Cir. 2001) the Appellate Court held that "Where a decision turns on the meaning of a word in a statute or regulation, the decision is one of law which must be made by a Court."

Where there can be no doubt that the bureau has long preached that "they have complete discretion to deny inmates their statutory right to early release", it is clear atleast to these movant's that what that amounts too is an "agency conferring power upon itself." in <u>Gorbach v. Reno</u>, 219 F.3d 1087 (8th Cir. 2000) the Appellate Court held that, "An agency may not confer power upon itself".

As stated above, the movant argues that the program statements used to deny him and thousands of other inmates early release each year or in direct conflict with Congress's intent and therefore cannot stand or be enforced. This is clearly supported in <u>U.S. v. Marlof</u>, 173 F.3d 1213 (9th Cir. 1999) where the 9th Circuit held, "Internal agency regulations cannot legitimate the violation of a statutory

Motion-11

or Constitutional Violation. In the case here, the bureau seems to try to convince the movants that there is some other rational reasons for amending their original program statements some six times until finally all but about 15 percent of the inmates are unable to receive the full year off for completing RDAP, However, the movants argue that these changes, and this abuse of discretion is for one purpose and one purpose only, and that is to keep the federal prison population overcrowded inorder to secure the employees of the Bureau of Prisons jobs. If this is incorrect, then the bureau is required to "articulate a rational connection between facts found and conclusions made". see <u>Desert Citizens Against Pollution v. Bisson</u>, 231 F.3d 1172 (9th Cir. 2000).

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Movant(s) assert that while 42 U.S.C. 1997e (a) (Supp. 2000) of the PRLA states as follows:

> "No action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal Law, by a prisoner confined in a county jail, prison, or other correctional facility, until such administrative remedies as are available are exhausted"

that this rule does not expressly prohibit 28 U.S.C. 2241 motions which are a form of Habeas Relief not covered under the term "action" as seen above from being filed without expiring the administrative remedies available. A 28 U.S.C. 2241 like a 28 U.S.C. 2255 is a "Writ" not a complaint or action such as the above mentioned 42 U.S.C. 1983.

While this movant is well aware of the fact that the respondents will attempt to claim that such cases as <u>Booth v. Churner</u>, 121 S.Ct. 1819 (2001) and <u>Porter v. Nussle</u>, 121 S.Ct. 983 (2002) have all touched on the subject of exhaustion requirements before filing, the cases both delt with 42 U.S.C. 1983 complaints and not Habeas Actions.

Movant would further assert that as seen on the record in similar cases such as the <u>Paulsen</u> case cited above and hundreds of others like it, the bureau has proven it has a ten year history of denying any and all claims dealing with the early release provisions and that this denial was not just during the admin-

Motion-12

istrative remedies levels but even after this very court ruled in favor of petitioner Paulsen and dozen of others on the subject, the Respondents always in an effort to delay justice appealed this court's order to the Ninth Circuit which upheld the lower court's rulings and granted relief to the petitioners.

There can be no doubt that a large number of the movant(s) joining together in this motion have exhausted their administrative remedies and in each case the respondents have proven time and time again that it is <u>futile</u> to do so by refusing to grant relief. See <u>Oxy USA Inc. v. Babbit,</u> 230 F.3d 1178 (10 th Cir. 2000), <u>Tallahassee Memorial v. Cook</u>, 109 F.3d 693 (11th Cir. 1997) and <u>McCarthy v. Madigan,</u> 503 U.S. 140 117 LEd.2d 291, 112 S.Ct. 1081 (1992) where the Court's all ruled, "Exhaustion of Administrative Remedies is not required where it would be <u>futile</u>".

Clearly here, the purpose of the Administrative Remedy Exhaustion Requirement is for the purpose of allowing the defendant to "create a record of the facts, and to allow an agency the opportunity to create a factual record and apply it expertise" see <u>McKart v. United States</u> 395 U.S. 185 (1969), again it is just as clear to the movant that the respondents have shown for over 10 years, that with regard to the issue in this motion, their so called "expertise" only allows for one conclusion, and that is that the movant never recieve relief without taking this issue to court, and even then they appear to thumb their noses at the lower courts and appeal each and ever order granting relief to the Court of Appeals, clearly if there ever was an issue that should be deemed Futile, it is this one and as such the movants are entitled to have their petitions heard on the merits not dismissed for failure to exhaust their administrative remedies, to do so would only prejudice the movant(s) even more and allow the respondents to continue to abuse their positions in order to meet their goal of keeping the prisons overcrowded.

## CONCLUSION

The movant(s) believe that in the interest of economical justice and to expedite the matters before the Court that the court should grant them the following immediate requests:

### JOINTER

That the cases all filed on the same day, in this same format, with the Clerks office be joined together and all proceedings be held as one, and;

### APPOINTMENT OF COUNSEL

That pursuant to 18 U.S.C 3006A, this court immediately appoint Counsel to represent these movants as one.

### POSTING AND NOTICE REQUESTS

That this Court issue and interm order of it's own ordering the posting of this action in the Law Library, with notations instructing any and all other inmate who believe they have a interest in this case to be contact the appointed attorney, and be allowed to join in the petition.

Dated this 23rd day of Aug, 2004   by /s/ Steven Raj
Steven Raj. #93375-011
Movant, Pro se
Federal Correctional Institution
P.O. Box 5000
Sheridan, OR. 97378

### DECLARATION OF MOVANT

I, Steven Raj.       declare:

1.) I am an inmate at the Federal Correctional Institution in Sheridan, Oregon.

2.) That I have read and understand the attached motion and know the facts regarding the allegations that the bureau of prisons, facility at FCI Sheridan, have never posted any notices regarding the "Proposed Rule nor Final Rule Changes" mentioned in the <u>Paulen</u> case regarding changes to the RDAP program.

3.) That I have verified the information regarding the fact that there is in fact a copy of a change notice dating clear back to October of 2000 in the RDAP

housing unit behind a locked glass case, which clearly revolves around special housing issues and there are no other notices posted.

4.) That in Law Library, since I have been an inmate at Sheridan the only program statements regarding the RDAP programs available in the Law Library is the October 9, 1997 ones and it does not say that it is a interm rule or give any indication that there are instructions for commenting on it.

5.) That the law library does not have copies of the Federal Register, and that even though they recently supplied inmates with copies of a July 25, 2005 document claiming there is a list of Federal Register Change Notices available in the Law Library, there are none relating to RDAP Changes and of the 17 Proposed and Final Notices it says are in there, only two exist and they revolve around medical co-pay and disiplinary issues.

6.) That I was present or spoke directly to someone who was present when the issue of the all the missing change notices were brought to the attention of the Law Clerks and BOP employee Mr. Tony who oversees the Law Library, and know first hand that he had no explanation why the document stated the change notices were available but were infact not available.

7.) That I have been told that it will do no good to attempt to get the Bureau of prisons to reconsider my request for early release, because they claim that they have total "discretion in the matter."

8.) That the information regarding the fact that the employees at Sheridan FCI have interferred with the Notice And Comment requirements is correct.

I declare under penalty of perjury in accordance with the provisions of 28 U.S.C. § 1746 that the above is accurate to the best of my knowledge and belief.

Dated this 23 day of August, 2003 by: _____
Movant Pro se'

Motion-15

| BP-A761.055 | U.S. DEPARTMENT OF JUSTICE |
|---|---|
| JAN 04 | |
| RESIDENTIAL DRUG ABUSE PROGRAM NOTICE TO INMATE | FEDERAL BUREAU OF PRISONS |

| To | Reg. No. |
|---|---|
| MILTON, Thomas | 92902-011 |
| From  *Alpha Omega Curry* | Institution |
| Alpha Omega Curry, Ph.D. | FCI I Victorville, CA |
| Title | Date |
| Drug Abuse Program Coordinator | 12/15/2004 |

## Section 1. RESIDENTIAL DRUG ABUSE PROGRAM QUALIFICATION

You have requested participation in the Bureau's Residential Drug Abuse Treatment Program. My review of your case indicates that you ( **X** DO ___ DO NOT ) meet the admission's criteria for the Residential Drug Abuse Program. It appears that you ( **X** DO ___ DO NOT ) qualify to participate in the Residential Program. State the reason(s) below.

Comments

**SECTION 2 - PROVISIONAL § 3621 (E) ELIGIBILITY** (To be completed only if the inmate has completed or qualifies for the Residential Drug Abuse Treatment Program.)

For Residential Drug Abuse Treatment Program graduates to be eligible for early release, they must (DAPC must) "x".)

| **X** Not an INS detainee. | **X** Not a pre-trial inmate. |
|---|---|
| **X** Not a contractual boarder. | **X** Not an "old law" inmate. |
| ___ Not have a current crime that is an excluding offense in BOP categorization of offenses policy (Mark an "x" in the appropriate block on the right.) | ___ Not a crime of violence as contained in BOP Categorization of Offenses policy.<br><br>**X** Not an excluding crime by the Director's discretion in Categorization of Offenses policy. |
| **X** Not have any prior felony or misdemeanor adult convictions for homicide, forcible rape, robbery, aggravated assault, or sexual abuse of children. ||

My current assessment, in consultation with your unit team, is that it ( ___  **X** DOES NOT ) appear that you are provisionally eligible for an early release. If not, List **ALL** the reason(s).

Comments
In accordance with Program Statements 5162.04, Categorization of Offenses, dated October 9, 1997, and 5331.01, Early Release Procedures Under 18 U.S.C. § 3621(e), dated September 29, 2003, you are precluded from early release consideration due to your current offense, Felon in possession of a firearm 18 U.S.C. 922(g)(1).

If applicable, I understand that a determination of early release for me is provisional, may change, and depends on continued positive behavior and successful participation in all components of the program, including community transitional services.

| Inmate's Signature (indicate if refused to sign) | Refused to sign |
|---|---|
| /s/ | ___ Yes  **X** No |

cc: Drug Abuse Treatment File; Unit Team (place in section 4 of inmate central file; inmate

(This form may be replicated via WP)                    (This form replaces BP-s761 dtd DEC 03)

```
                                                    PS 5330.10
                                              CN-03 October 09, 1997
                                               Attachment J, Page 2
```

**SECTION 2 - PROVISIONAL § 3621(E) ELIGIBILITY** - TO BE COMPLETED ONLY IF THE INMATE HAS COMPLETED OR QUALIFIES FOR THE RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM.

FOR RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM GRADUATES TO BE ELIGIBLE FOR EARLY RELEASE, THEY MUST (DAPC must initial):

- X/ NOT BE AN INS DETAINEE.
- X/ NOT BE A PRE-TRIAL INMATE.
- X/ NOT BE A CONTRACTUAL BOARDER.
- X/ NOT BE AN "OLD LAW" INMATE.
- X/ NOT HAVE A CURRENT CRIME THAT IS AN EXCLUDING OFFENSE IN BOP CATEGORIZATION OF OFFENSES POLICY (Mark an 'X' in the appropriate block below).

    - X/ NOT A CRIME OF VIOLENCE AS CONTAINED IN BOP CATEGORIZATION OF OFFENSES POLICY.

    - X/ NOT AN EXCLUDING CRIME BY THE DIRECTOR'S DISCRETION IN CATEGORIZATION OF OFFENSES POLICY

- __ NOT HAVE ANY PRIOR FELONY OR MISDEMEANOR ADULT CONVICTION FOR HOMICIDE, FORCIBLE RAPE, ROBBERY, AGGRAVATED ASSAULT, OR SEXUAL ABUSE OF CHILDREN.

- X/ UNDERSTAND THAT NEARING THE TIME OF YOUR RELEASE, THE WARDEN WILL DETERMINE IF YOU ARE ELIGIBLE FOR TRANSFER TO A COMMUNITY-BASED PROGRAM. IF YOU ARE NOT ELIGIBLE, YOU CANNOT COMPLETE THE COMMUNITY TRANSITIONAL SERVICES PORTION OF THE DRUG PROGRAM, AND THEREFORE, YOU MAY NOT RECEIVE A § 3621 (e) RELEASE.

MY CURRENT ASSESSMENT, IN CONSULTATION WITH YOUR UNIT TEAM, IS THAT IT DOES / (DOES NOT) APPEAR THAT YOU ARE PROVISIONALLY ELIGIBLE FOR AN EARLY RELEASE. IF NOT, LIST **ALL** THE REASON(S):

Comme _____

---

**IF APPLICABLE, I UNDERSTAND THAT A DETERMINATION OF EARLY RELEASE FOR ME IS PROVISIONAL, MAY CHANGE, AND DEPENDS ON CONTINUED POSITIVE BEHAVIOR AND SUCCESSFUL PARTICIPATION IN ALL COMPONENTS OF THE PROGRAM, INCLUDING COMMUNITY TRANSITIONAL SERVICES.** *
INMATE'S SIGNATURE _Michael One_____
(indicate if refused to sign)
cc: Drug Abuse Treatment File
    Unit Team (place in section 4 of inmate central file)

BP-A761.055
JAN 04
**RESIDENTIAL DRUG ABUSE PROGRAM NOTICE TO INMATE**

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

| To | WILLIAMS, Mick | Reg. No. | 92387-011 |
|---|---|---|---|
| From | *Alpha Omega Curry* / Alpha Omega Curry, Ph.D. | Institution | FCI I Victorville, CA |
| Title | Drug Abuse Program Coordinator | Date | 08/18/2004 |

**Section 1. RESIDENTIAL DRUG ABUSE PROGRAM QUALIFICATION**

You have requested participation in the Bureau's Residential Drug Abuse Treatment Program. My review of your case indicates that you ( **X** DO ___ DO NOT ) meet the admission's criteria for the Residential Drug Abuse Program. It appears that you ( **X** DO ___ DO NOT ) qualify to participate in the Residential Program. State the reason(s) below.

Comments

**SECTION 2 - PROVISIONAL § 3621 (E) ELIGIBILITY** (To be completed only if the inmate has completed or qualifies for the Residential Drug Abuse Treatment Program.)

For Residential Drug Abuse Treatment Program graduates to be eligible for early release, they must (DAPC must) "x".)

| **X** Not an INS detainee. | **X** Not a pre-trial inmate. |
|---|---|
| **X** Not a contractual boarder. | **X** Not an "old law" inmate. |
| ___ Not have a current crime that is an excluding offense in BOP categorization of offenses policy (Mark an "x" in the appropriate block on the right.) | ___ Not a crime of violence as contained in BOP Categorization of Offenses policy.<br><br>**X** Not an excluding crime by the Director's discretion in Categorization of Offenses policy. |
| **X** Not have any prior felony or misdemeanor adult convictions for homicide, forcible rape, robbery, aggravated assault, or sexual abuse of children. ||

My current assessment, in consultation with your unit team, is that it ( ___ DOES **X** DOES NOT ) appear that you are provisionally eligible for an early release. If not, List **ALL** the reason(s).

Comments
In accordance with Program Statements 5162.04, Categorization of Offenses, dated October 9, 1997, and 5331.01, Early Release Procedures Under 18 U.S.C. § 3621(e), dated September 29, 2003, you are precluded from early release consideration due to your current offense Felon in Possession of a Firearm.

If applicable, I understand that a determination of early release for me is **provisional, may change**, and depends on continued positive behavior and successful participation in all components of the program, including community transitional services.

| Inmate's Signature (indicate if refused to sign)<br>*Mick Williams* | Refused to sign<br>___ Yes  **X** No |
|---|---|

c: Drug Abuse Treatment File; Unit Team (place in section 4 of inmate central file; inmate

(This form may be replicated via WP)                    (This form replaces BP-s761 dtd DEC 03)